UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BUMBLE BEE SEAFOODS, L.L.C.,
a Delaware corporation,

        Plaintiff,

   v.

UFS INDUSTRIES, INC. d/b/a
SALLY SHERMAN FOODS

        Defendant.

------------------------------------------------------------X

JUDGE STEIN

04 CV 02105

Case No.

COMPLAINT FOR TRADEMARK INFRINGEMENT (15 U.S.C. 1114(1)), FALSE DESIGNATIONS, DESCRIPTIONS AND REPRESENTATIONS (15 U.S.C. 1125(a)), STATE UNFAIR COMPETITION, AND STATE TRADEMARK DILUTION (N.Y. GEN. BUS. LAW § 360-l)

ECF CASE

DEMAND FOR JURY TRIAL



      Plaintiff BUMBLE BEE SEAFOODS, L.L.C., by its attorneys, Gray Cary Ware & Freidenrich LLP and Leader & Berkon LLP, alleges as follows:

### JURISDICTION AND VENUE

      1.   This is a civil action arising under the United States Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq., together with related state law claims.

      2.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, and 15 U.S.C. § 1121, as it involves an action arising under the United States trademark laws, 15 U.S.C. §§ 1051 et seq., together with related claims under state law.

3.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 (a) and (b), because the defendant resides in this district and because a substantial part of the events giving rise to the action occurred in this judicial district.

4.  This Court has personal jurisdiction over Defendant, who resides in and/or conducts business within this district.

### NATURE OF THE ACTION

5.  This is an action for the willful infringement of registered and common law trademarks in violation of the Trademark Act of 1946, 15 U.S.C. §§ 1114(1) and 1125(a) through 1) the willful and intentional misuse of Bumble Bee's registered and common law trademarks with the intention to cause consumer confusion as to source, sponsorship or affiliation; 2) the use of false designations of origin and/or false and misleading descriptions and representations; 3) unfair competition in violation of the common law of New York; and dilution under New York Gen. Bus. Law § 360-l.

### THE PARTIES

6.  Plaintiff BUMBLE BEE SEAFOODS, L.L.C. ("BUMBLE BEE" or "Plaintiff") is a Delaware corporation with its principal place of business located at 9655 Granite Ridge Road, Suite 100, San Diego, California.

2

7.   On information and belief, Defendant UFS Industries, Inc. d/b/a SALLY SHERMAN FOODS ("Defendant") is a New York corporation, with its principal place of business located at 300 N. MacQuesten Parkway, Mt. Vernon, New York.

## FACTS UNDERLYING THE CAUSES OF ACTION

### BUMBLE BEE and its Trademarks

8.   Plaintiff BUMBLE BEE is a leading provider of seafood, including tuna.

9.   Plaintiff is the owner of trademark registration No. 1010513 and trademark application S/N 76544986 for its BUMBLE BEE marks (together "Plaintiff's Marks"). True and correct copies of the records of the United States Patent and Trademark Office evidencing these marks are attached as Exhibit A. Plaintiff has used these marks in commerce in connection with seafood since at least as early as 1910.

10.  These BUMBLE BEE marks are well known as a source indicator for quality seafood products. BUMBLE BEE has the exclusive right to use the Plaintiff's Marks in connection with the sale, offer for sale or distribution of seafood in the United States.

11.  Customers purchase products bearing Plaintiff's Marks because of the high quality products associated with

3

Plaintiff's Marks.

12. Plaintiff's Marks have had substantial success as a brand name for seafood. Yearly sales revenue from sales of products under Plaintiff's Marks are in the millions of dollars.

13. Plaintiff has continuously advertised the Plaintiff's Marks through various means including print, radio and television media since 1910. Substantial sums have been spent on advertising to establish the Plaintiff's Marks.

14. As a result of Plaintiff's sales, advertising, and promotion of Plaintiff's Marks, as well as the high quality and reliable nature of the goods provided by Plaintiff, Plaintiff's Marks are widely recognized in the food industry and by consumers as belonging solely to Plaintiff, and distinguish Plaintiff's goods from the goods of others. Plaintiff's Marks represent the extremely valuable reputation and goodwill belonging exclusively to Plaintiff.

15. Plaintiff employs a Quality Assurance program under which it permits salad processing companies to manufacture and market processed tuna salad using its products and bearing Plaintiff's Marks. This program is subject to certain specific requirements. Specifically, in order to participate in this program and use Plaintiff's Marks, manufacturers must agree to follow Plaintiff's specifications and must further agree to

allow Plaintiff to review their recipes and ingredients, inspect their manufacturing facilities and to adhere to Plaintiff's strict Quality Assurance standards. A true and correct copy of Plaintiff's Internal Product Specification for its Albacore Tuna Salad is attached as Exhibit B to this Complaint, and is incorporated herein by this reference.

16. On information and belief, Defendant is well aware of Plaintiff's Marks, and of the reputation and goodwill represented by its name and marks.

17. On information and belief, Defendant is also well aware that the public recognizes, trusts and relies upon these marks as identifying the goods of Plaintiff and distinguishing Plaintiff's goods from the goods of others.

18. Notwithstanding this aforesaid knowledge, on information and belief, Defendant set upon a course of conduct to intentionally and willfully misappropriate Plaintiff's Marks and the goodwill and reputation associated therewith.

19. On or around November and December 2003, Plaintiff communicated with Defendant about the possibility of Defendant participating in Plaintiff's Quality Assurance program which would allow Defendant to use Plaintiff's Marks on its tuna salad product. Plaintiff provided a Quality Assurance Survey to screen Defendant as a potential candidate for participating in

the program to make processed tuna salad which would bear Plaintiff's Marks. Defendant completed Plaintiff's survey, which was accepted by Plaintiff. Plaintiff's Quality Assurance manager then proceeded with the next step in Plaintiff's Quality Assurance program and scheduled an onsite visit for December 16, 2003, in which Plaintiff would inspect Defendant's facilities, and meet with Defendant's top Quality Assurance and plant managers.

20. On or around a week before the scheduled visit, Defendant advised Plaintiff that it had decided against participating in Plaintiff's Quality Assurance process, and that it was withdrawing from the Quality Assurance plant inspection process.

21. In contrast, on or around the same time that Defendant applied for participation in Plaintiff's Quality Assurance process, Plaintiff also interviewed and inspected Blue Ridge Farms, Inc. as a prospective manufacturer to participate in Plaintiff's Quality Assurance program to manufacture and market a processed tuna salad using Plaintiff's product and bearing Plaintiff's Marks under this program. Blue Ridge Farms, Inc. agreed to and complied fully with all of the requirements under Plaintiff's Quality Assurance program in order to be able to use Plaintiff's Marks and is a participant in the program and has been given a license to use Plaintiff's marks with its products.

22. In early March 2004, Plaintiff discovered that Defendant was using Plaintiff's Marks on lids attached to its processed tuna salad. Defendant undertook to use Plaintiff's Marks despite its knowledge of Plaintiff's requirements for use, and without Plaintiff's permission. A true and correct copy of this use of Plaintiff's Marks are attached as Exhibit C to this Complaint, and is incorporated herein by this reference.

23. Defendant is not authorized to offer or sell products bearing Plaintiff's Marks and is not an authorized dealer or distributor or otherwise authorized to sell products bearing Plaintiff's Marks.

24. In a letter dated March 2, 2004, Plaintiff, through its attorney, advised Defendant that it was willfully and intentionally using Plaintiff's Marks without Plaintiff's permission, and demanded Defendant provide Plaintiff written assurance it would discontinue use of Plaintiff's Marks by March 5, 2004. A true and correct copy of this letter is attached hereto as Exhibit D to this Complaint, and incorporated herein by this reference.

25. In a letter dated March 5, 2004, Plaintiff re-iterated that Defendant was willfully and intentionally using Plaintiff's Marks without its authorization, and reminded Defendant of its deadline to respond to Plaintiff's demand. A true and correct copy of this letter is attached hereto as

Exhibit E to this Complaint, and incorporated herein by this reference.

26. On March 8, 2004, Plaintiff's attorney called Defendant, requesting the status of Defendant's response to Plaintiff's demand. Defendant informed Plaintiff's attorney that it had turned the matter over to its attorney, and that it believed it was making fair use of Plaintiff's Marks.

27. As of the date of this Complaint, Defendant continues its infringing use of Plaintiff's Marks despite Plaintiff's demands.

28. Defendant is continuing to use Plaintiff's Marks without the consent or permission of Plaintiff. Plaintiff has not authorized or licensed Defendant in any way to use Plaintiff's Marks.

29. On information and belief, Defendant sells products bearing Plaintiff's Marks with the intent to trade on and profit off of the reputation and goodwill represented by Plaintiff's Marks, and with the intent to confuse, mislead, and/or deceive the public into believing that Defendant's goods have been sponsored or approved by Plaintiff, or are otherwise affiliated, connected, or associated with Plaintiff.

30. Defendant's use of Plaintiff's Marks has, and in the future, is likely to confuse, mislead, and/or deceive the public into believing that Defendant's goods are Plaintiff's goods, or have been sponsored or approved by Plaintiff, or are otherwise affiliated, connected, or associated with Plaintiff.

31. Plaintiff has been damaged and is likely to be further damaged by Defendant's continued use of Plaintiff's Marks, in that existing and potential commercial and retail consumers of Plaintiff's product are deceived into believing that Defendant's products are Plaintiff's goods, or have been sponsored or approved by Plaintiff, or are otherwise affiliated, connected, or associated with Plaintiff.

32. Defendant's aforesaid acts have caused and will continue to cause great and irreparable injury to Plaintiff and, unless such acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

## CAUSES OF ACTION

### COUNT I

**TRADEMARK INFRINGEMENT**

(15 U.S.C. § 1114(1))

33.  BUMBLE BEE repeats and realleges paragraphs 1 through 32 as though fully set forth herein.

34.  BUMBLE BEE's registered mark is fanciful, arbitrary and has long been associated in the minds of the public and consumers with BUMBLE BEE as an indicator of the source of its products and services and has been used in interstate commerce since at least as early as 1944.  BUMBLE BEE has extensively advertised its BUMBLE BEE mark on a national basis since 1944.

35.  Defendant's use of Plaintiff's Marks has, and in the future, is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, association or sponsorship of the goods offered by Defendant in violation of 15 U.S.C. § 1114 (1), leaving the public to believe that Defendant's products emanate or originate from BUMBLE BEE and/or that BUMBLE BEE has approved, sponsored or otherwise associated itself with Defendant's products.

36.  Upon information and belief, Defendant's conduct

is intended to exploit the good will and reputation associated with the Plaintiff's Marks and to obtain a competitive advantage without expenditure of resources by Defendant, through a strategy of intentional and willful infringement of Plaintiff's Marks.

37. There is no connection, association, license or other authorization between Defendant and Plaintiff. Plaintiff has not authorized, licensed or given permission to Defendant to use Plaintiff's Marks in any manner whatsoever, including without limitation, use in connection with Defendant's processed tuna salad.

38. Defendant's acts have caused, and will continue to cause, great and irreparable injury to Plaintiff and will continue to do so unless such acts are restrained by this Court.

39. This harm cannot be adequately compensated by money damages, and Plaintiff has no other adequate remedy at law.

40. Pursuant to U.S.C. §1116(a), Defendant should be enjoined from engaging in further infringing activities.

41. Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to an order requiring Defendant to account to Plaintiff for any and all profits derived by Defendant from its actions,

and awarding all damages sustained by Plaintiff that were caused by Defendant.

## COUNT II

**FEDERAL UNFAIR COMPETITION, FALSE DESIGNATIONS OF ORIGIN AND MISLEADING REPRESENTATION**

(15 U.S.C. § 1125(a)(1))

(Common Law Trademark Infringement)

42. BUMBLE BEE repeats and realleges paragraphs 1 through 41 as though fully set forth herein.

43. BUBMBLE BEE has made use of its BUMBLE BEE trademark to identify the source of its products and services since 1910 and has used the BUMBLE BEE marks in interstate commerce since January 1910. BUMBLE BEE has extensively advertised its BUMBLE BEE mark on a national basis since 1944.

44. Defendant's use of Plaintiff's Mark constitutes use in commerce of words, terms, names and symbols, and of false designations of origin, and false or misleading descriptions and representations that have, and in the future, are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, association or sponsorship of the goods offered by Defendant, in violation of 15 U.S.C. § 1125(a)(1).

45. Upon information and belief, Defendant

intentionally and willfully used Plaintiff's Mark on its processed tuna salad. In choosing and using Plaintiff's Mark, Defendant intended to, and did, confuse and mislead the public, and did represent and create the false impression that Plaintiff authorized, sponsored, approved, licensed or participated in the creation of Defendant's infringing use of the BUMBLE BEE mark. There is no connection, association, license or other authorization between Defendant and Plaintiff. Plaintiff has not authorized, licensed or given permission to Defendant to use Plaintiff's Mark in any manner whatsoever, including without limitation, use in connection with Defendant's processed tuna salad.

46. Defendant's acts have caused, and will continue to cause, great and irreparable injury to Plaintiff and will continue to do so unless such acts are restrained by this Court.

47. This harm cannot be adequately compensated by money damages, and Plaintiff has no other adequate remedy at law.

48. Pursuant to U.S.C. §1116(a), Defendant should be enjoined from engaging in further infringing activities.

49. Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to an order requiring Defendant to account to Plaintiff for any and all profits derived by Defendant from its actions,

and awarding all damages sustained by Plaintiff that were caused by Defendant.

## COUNT III

### N.Y. COMMON LAW UNFAIR COMPETITION

50. Plaintiff repeats and realleges paragraphs 1 through 49 as though fully set forth herein.

51. Plaintiff is informed and believes that Defendant knowingly performed acts, including, but not limited to, wrongfully and willfully misrepresenting to customers, potential customers and to the public that it is authorized to use Plaintiff's Marks and/or that it is authorized to sell or distribute products bearing Plaintiff's Marks. Defendant's conduct constitutes unlawful, unfair, and fraudulent business acts and practices and unfair competition prohibited under unfair competition provisions of New York common law.

52. As a result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, irreparable harm to its business reputation, goodwill, and stature in the business community. This harm cannot be adequately compensated by money damages and Plaintiff has no other adequate remedy at law.

53. In addition, as a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

54. Plaintiff is informed and believes and thereon alleges that Defendant committed the above-alleged acts oppressively, fraudulently, maliciously and in conscious disregard of Plaintiff's rights, and Plaintiff is therefore entitled to exemplary and punitive damages pursuant to the New York common law of unfair competition in an amount sufficient to punish, to deter and to make an example of Defendant.

## COUNT IV

### DILUTION UNDER N.Y. GEN. BUS. LAW § 360-1

55. Plaintiff repeats and realleges paragraphs 1 through 54 as though fully set forth herein.

56. Plaintiff's Marks have attained a distinctive quality through their long, continued use, advertising, and promotion throughout the United States and the world.

57. By using Plaintiff's Marks for its own purposes, Defendant seeks to misappropriate Plaintiff's well-established and famous reputation, and thereby unfairly trade on Plaintiff's goodwill and reputation. Defendant has articulated its intent

to continue these practices. Defendant's continued unlawful use of Plaintiff's Marks will further enable Defendant to benefit unfairly from Plaintiff's sales and promotional efforts and goodwill.

58. Defendant's use of Plaintiff's Marks to identify its own product blurs and dilutes the degree of distinctive values or qualities of Plaintiff's Marks and diminishes their advertising value and selling power, and the identity and reputation Plaintiff's Marks otherwise convey.

59. By virtue of its unlawful acts, Defendant has violated N.Y. Gen. Bus. Law § 360-l.

60. As a direct consequence of Defendant's unlawful acts and practices as alleged in this Complaint, Plaintiff has suffered and, unless such acts and practices are enjoined by this Court, will continue to suffer immediate and irreparable harm to its business reputation, goodwill, and stature in the business community. This harm cannot be adequately compensated by money damages, and Plaintiff has no other adequate remedy at law. Accordingly, Plaintiff is entitled to injunctive relief under New York law.

WHEREFORE, Plaintiff prays for the following relief:

1.   That Defendant and its agents, servants, employees, attorneys, successors, and assigns, and any and all persons acting in concert or participating with them or any of their successors or assigns or any of them, be preliminarily and permanently enjoined and restrained from directly or indirectly:

   a.   Using Plaintiff's Marks, or any reproduction, counterfeit, copy, colorable imitation, or confusingly similar variation thereof in connection with the advertising, distribution, procurement, supplying, offering for sale, or sale of processed tuna salad, or related goods or services;

   b.   Using Plaintiff's Marks or any reproduction, counterfeit, copy, colorable imitation, or confusingly similar variation thereof, in any manner likely to cause others to believe that Defendant's goods or services are the goods and services of Plaintiff, or have been sponsored or approved by Plaintiff, or are otherwise affiliated, connected, or associated with Plaintiff;

2. That Defendant be ordered to file with the Court and serve upon Plaintiff within thirty (30) days after the service of the injunction upon the Defendant, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction and judgment entered pursuant to this Complaint.

3. That Plaintiff recover damages in the form of Defendant's profits and/or Plaintiff's lost profits in such amounts as may be proven at trial.

4. That Plaintiff recover the damages arising out of the wrongful acts of Defendant in a sum equal to three times the actual damages suffered by Plaintiff, as provided in 15 U.S.C. § 1117(a).

5. That Plaintiff have and recover the taxable costs of this action, including reasonable attorneys' fees and interest, pursuant to 15 U.S.C. § 1117(a).

6. That Plaintiff recover exemplary and punitive damages pursuant to the New York common law.

7.   That Plaintiff have such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         March 16, 2004

>Respectfully submitted,
>
>LEADER & BERKON LLP
>
>By: _____
>James K. Leader (JL-9417)
>Joshua K. Leader (JL-5644)
>630 Third Avenue
>New York, NY 10017
>(212) 486-2400
>
>-and-
>
>GRAY CARY WARE & FREIDENRICH LLP
>Nancy O. Dix (State Bar # 129150)
>Kristin K. Manley (State Bar # 225197)
>4365 Executive Drive, Suite 1100
>San Diego, CA 92121-2133
>(858) 638-6859
>
>*Attorneys for Plaintiffs*
>*Bumble Bee Seafoods, L.L.C.*

DEMAND FOR JURY TRIAL

Plaintiff BUMBLE BEE SEAFOODS, L.L.C. hereby demands a trial by jury.

Dated:   New York, New York
         March 16, 2004

Respectfully submitted,

LEADER & BERKON LLP

By: _____
James K. Leader (JL-9417)
Joshua K. Leader (JL-5644)
630 Third Avenue
New York, NY 10017
(212) 486-2400

-and-

GRAY CARY WARE & FREIDENRICH LLP
Nancy O. Dix (State Bar # 129150)
Kristin K. Manley (State Bar # 225197)
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
(858) 638-6859

*Attorneys for Plaintiffs
Bumble Bee Seafoods, L.L.C.*